FILED
FEB 2 6 2009
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: Deputy Clerk

U.S. BANKRUPTCY COURT
ENTERED
FEB 27 2009
Jon D. Ceretto, Clerk of Court
CENTRAL DISTRICT OF CALIFORNIA
BY: Deputy Clerk

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

In re:

THOMAS RUBEN REYES and
DENISE MARIE REYES,

Debtors.

Case No. 6:08-bk-28740-PC

Chapter 13

**AMENDED MEMORANDUM DECISION**

Date: February 4, 2009
Time: 1:30 p.m.
Place: United States Bankruptcy Court
Courtroom # 304
3420 Twelfth Street
Riverside, CA 92501

Thomas Ruben Reyes and Denise Maries Reyes ("Debtors") seek confirmation of their proposed chapter 13 plan. Rod Danielson, chapter 13 trustee ("Danielson") objects to confirmation. At the hearing, Pam Lacey appeared for the Debtors and Elizabeth Schneider appeared for Danielson. The court, having considered the pleadings, evidentiary record, and arguments of counsel, makes the following findings of fact and conclusions of law[1] pursuant to F.R.Civ.P. 52, as incorporated into FRBP 7052 and applied to contested matters by FRBP 9014(c).[2]

## I. STATEMENT OF FACTS

On December 31, 2008, Debtors filed their voluntary chapter 13 petition. In the schedules filed with the petition, Debtors disclosed real and personal property valued at $385,720. Debtors' statement of financial affairs reveals that Debtors had gross income of $108,684 and $104,755 in

---

[1] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.

[2] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse and Consumer Prevention Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("F.R.Civ.P."), which make applicable certain Federal Rules of Civil Procedure ("FRBP").

2008 and 2007, respectively. Debtors' residence valued at $350,000 is encumbered by a first deed of trust lien held by Community Mortgage Funding securing a debt of $395,000 and a second deed of trust lien held by Water & Power Community Credit Union ("W&P") attributable to a debt of $113,256. W&P's second deed of trust lien appears to be wholly unsecured. Debtors also owe approximately $15,000 on the lease of a 2006 Jeep Liberty. Debtors list 8 creditors in Schedule F holding unsecured nonpriority claims totaling $53,898 consisting primarily of credit card debt. There are no unsecured priority claims according to Schedule E.

Debtors' income is "above median" according to their Form B22C, <u>Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income</u> ("Form B22C") filed under penalty of perjury with the petition. As a result, Debtors were required by § 1325(b)(3) to calculate their expenses pursuant to § 707(b)(2), which resulted in monthly disposable income under § 1325(b)(2) as a negative number: -$938.25. Debtors' Schedules I and J tell a different story. Schedules I and J reflected monthly income and expenses of $6,671 and $6,071, respectively, with monthly net income of $600. In their plan, Debtors proposed to pay to Danielson the sum of $600 per month for a period of 60 months, which was estimated to pay 9 % of allowed unsecured nonpriority claims.

Prior to confirmation, Danielson attacked the following deductions taken by the Debtors in Form B22C in calculating their current monthly income under the means test:

    a.    Line # 47(c) – A deduction of $1,124.04 payable to W&P in conjunction with "Future Payments on Secured Claims;"

    b.    Line # 48(b) – A deduction of $80.00 payable to W&P in conjunction with "Other Payments on Secured Claims;" and

    c.    Line # 28 – A deduction of the full vehicle ownership allowance under the IRS's Local Standards.

Danielson objects to confirmation, asserting that Debtors' proposed plan does not provide for the payment of all of the Debtors' projected disposable income during the five-year term of the plan as required by § 1325(b). Specifically, Danielson objects to Debtors' calculation under § 707(b)(2)(A)(iii) of (1) a secured debt deduction attributable to a junior lien on the Debtors'

principal residence which the Debtors intend to value, treat as wholly unsecured, and strip in conjunction with confirmation of their plan; and (2) the amount of a vehicle ownership allowance claimed by the Debtors under the Local Standards. According to Danielson, the Debtors must commit to plan payments of $1,336 per month for a period of 60 months to satisfy the confirmation requirements of § 1325. Such a plan would pay 33% of allowed unsecured nonpriority claims in the case.

## II. DISCUSSION

This court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (L) and (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a).

A.    <u>Deduction of Secured Debt Payments Attributable to a Stripped Junior Lien</u>.

Danielson argues that the Debtors have no intention of paying W&P's debt as a secured claim under their plan, pointing out that Debtors did not list the monthly payment due to W&P in Schedule J and that Debtors have filed an adversary proceeding against W&P seeking to "strip" its lien and determine its claim to be wholly unsecured.[3] In response, Debtors argue that the deductions at Lines # 47(c) and 48(b) are proper because the amounts owing to W&P were "contractually due" on the petition date, citing In re Wilkins, 370 B.R. 815 (Bankr. C.D.Cal. 2006).

Wilkins is not dispositive. Wilkins addressed the issue of whether a chapter 7 debtor can include mortgage payments in the debtor's means test calculation, notwithstanding the debtor's

---

[3] Valuation does not require the filing of an adversary proceeding. Scott v. Countrywide Home Loans, Inc. (In re Scott), 376 B.R. 285, 291 (Bankr. D. Idaho 2007). Valuation pursuant to 11 U.S.C. § 506(a) and FRBP 3012 is a contested matter initiated by the filing of a motion. FRBP 3012. A valuation motion does not seek to avoid a lien nor determine the extent, validity, or priority of a security interest. See FRBP 7001(2). Nor does the adjudication of a valuation motion determine the validity of a claim or avoid a lien or security interest. The junior lienholder's deed of trust remains of record until the plan is completed. 11 U.S.C. § 1325(a)(5)(B)(i).

- 3 -

intention to surrender the property immediately after bankruptcy. Id. at 816. The court in Wilkins denied the United States trustee's motion to dismiss under § 707(b)(2), holding that the mortgage payments were still "scheduled as contractually due" on the date of the petition and properly deductible from the debtor's current monthly income in performing the means test calculation. Id. at 819. The result is different in the context of a chapter 13 case.[4]

The majority of courts addressing this issue have concluded that, in calculating projected disposable income, a chapter 13 debtor may not deduct from current monthly income secured debt payments on real property which the debtor intends to surrender. See, e.g., In re Suess, 387 B.R. 243, 247 (Bankr. D.S.D. 2007); In re Van Bodegom Smith, 383 B.R. 441, 451 (Bankr. E.D. Wis. 2008); Spurgeon, 378 B.R. at 201; In re Sackett, 374 B.R. 70, 72-73 (Bankr. W.D.N.Y. 2007); In re McPherson, 350 B.R. 38, 47 (Bankr. W.D. Va. 2006); In re Crittendon, 2006 WL 2547102, *3 (Bankr. M.D.N.C. 2006). First, the timing of the application of § 707(b)(2)(A) and (B) is different in a chapter 13 case. Crittendon, 2006 WL 2547102, *3. While the chapter 7 calculation to determine whether a presumption of abuse arises under § 707(b)(2) is made as of the date of the petition, § 1325(b)(1) specifically requires the court, upon objection, to make the determination whether the chapter 13 debtor is committing all projected disposable income "as of the effective date of the plan." 11 U.S.C. 1325(b)(1); see, e.g., Suess, 387 B.R. at 247; Van Bodegom Smith,

---

[4] Debtors cite In re Oliver, 2006 WL 2086691 (Bankr. D. Or. 2006), which held that a chapter 13 debtor who intended to surrender real property could take a secured debt deduction on the means test, reasoning that "Form B22C is only the *first step* to calculate the amount to be paid under the debtor's [sic] proposed plan." Id. at *3 (emphasis added). The majority of courts disagree with the Oliver decision. See In re Hoss, 392 B.R. 463, 469 n.24 (Bankr. D. Kan. 2008); In re Spurgeon, 378 B.R. 197, 200-01 (Bankr. E.D. Tenn. 2007); In re McGillis, 370 B.R. 720, 728 n.12 (Bankr. W.D. Mich. 2007); In re Edmunds, 350 B.R. 636, 641 (Bankr. D.S.C. 2006). It is important to note that Oliver preceded Pak v. eCase Settlement Corp. (In re Pak), 378 B.R. 257 (9th Cir. BAP 2007), which held that the "calculation of disposable, as defined in § 1325(b)(2), [was] the *starting point* for determining "projected disposable income," subject to adjustment, based on evidence, to reflect the reality going forward." Id. at 268 (emphasis added). Pak was later abrogated by Maney v. Kagenveama (In re Kagenveama), 541 F.3d 859, 874 (9th Cir. 2008).

-4-

1  383 B.R. at 451; Sackett, 374 B.R. at 72-73. Second, the chapter 13 plan effectively creates a new
2  contract between the debtor and secured creditor, so no payments are scheduled as contractually
3  due to a secured creditor if the plan proposes a surrender of collateral. Suess, 387 B.R. at 248;
4  Van Bodegom Smith, 383 B.R. at 450; Spurgeon, 378 B.R. at 201; McPherson, 350 B.R. at 46.
5  Third, the majority's interpretation promotes the policies underlying chapter 13 bankruptcy. See
6  In re Holmes, 395 B.R. 149, 153 (Bankr. M.D. Fla. 2008) ("As one of the main requirements in
7  Chapter 13 is that a plan be funded with all of the debtor's disposable income, it would go against
8  the very essence of Chapter 13 to allow a debtor to deduct an expense that is non-existent at the
9  time of confirmation."). Finally, a contrary interpretation might result in disparate treatment
10  between below median and above median debtors when surrendering real property under a plan,
11  i.e., a below median debtor, whose plan payments are determined by the actual income and
12  expenses stated in Schedules I and J as of the effective date of the plan, could pay more that an
13  above median debtor, whose projected disposable income is calculated under the means test. See
14  In re Fager, 2008 WL 2497694, *2 (Bankr. D. Neb. 2008); In re Marciniak, 2008 WL 2497690, *2
15  (Bankr. D. Neb. 2008).

16      Courts have applied the same rule where debtors intend to strip a junior lien on a principal
17  residence they intend to retain. See, e.g., Hoss, 392 B.R. at 473-74 ("Only a secured debt payment
18  deduction for the first mortgage is permitted; that is all that is 'reasonably necessary to be
19  expended' under the plan in order for the debtors to retain their home."); McPherson, 350 B.R. at
20  45 (stating that where "a secured claim is bifurcated for purposes of treatment under the chapter
21  13 plan[,] . . . [a]ny deduction from income based on a secured claim that no longer exists may not
22  be allowed.").

23      Accordingly, the court will sustain Danielson's objection. In calculating projected
24  disposable income, Debtors will not be permitted to deduct from current monthly income secured
25  debt payments attributable to a junior lien on the Debtors' principal residence which the Debtors
26  intend to value, treat as wholly unsecured, and strip in conjunction with confirmation of their plan.
27

B.  Deduction of Vehicle Ownership Expense.

Section 1325(b)(3) provides, in pertinent part that "amounts reasonably necessary to be expended under [§ 1325(b)(2)] shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." 11 U.S.C. § 1325(b)(3). Under § 707(b)(2)(A)(ii)(I), a debtor's monthly expenses under the means test "shall be the debtor's applicable monthly expense amounts specified under the National Standards and the Local Standards, and the debtors' actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief . . . ." 11 U.S.C. § 707(b)(2)(A)(ii)(I). This court has followed consistently the line of cases holding that a debtor may not take a vehicle ownership allowance under the Local Standards for a vehicle that is owned free and clear of liens. See, e.g., Ransom v. MBNA Am. Bank, N.A. (In re Ransom), 380 B.R. 799, 808-09 (9th Cir. BAP 2007) ("Under § 707(b)(2)(A)(ii)(I), the deduction of a vehicle ownership expense only applies to the debtor when he or she has that particular expense."); In re Slusher, 359 B.R. 290, 310 (Bankr. D. Nev. 2007) (stating that taking a vehicle ownership deduction under the Local Standards for a vehicle owned free and clear of liens "would be inconsistent with the manner in which the IRS calculated and created the Local Standards"); In re McGuire, 342 B.R. 608, 612-13 (Bankr. W.D. Mo. 2006) (observing that "the ownership expense only applies to debtors who actually are obligated to pay a monthly loan or lease payment associated with a vehicle"); In re Hardacre, 338 B.R. 718, 728 (Bankr. N.D. Tex. 2006) ("Because the Local Standards only provide for a deduction for automobiles that are subject to lease or purchase, they do not permit a debtor to claim an ownership deduction for a vehicle owned free and clear by the debtor.").

In this case, the Debtors are entitled to take a vehicle ownership allowance under the Local Standards for the 2006 Jeep Liberty that is subject to a lease with Chrysler Financial. The remaining issue is the amount of the allowance to which the Debtors are entitled. As the Ninth Circuit Bankruptcy Appellate Panel observed in Ransom, courts are divided on this issue:

> The issue of whether, if the debtor makes loan or lease payments on a vehicle, the debtor can take the full deduction under the Local Standards, whatever the actual amount of the vehicle expense, is not before us in this appeal. Some courts have concluded that the debtor can take the full standard deduction, even though he or she has an actual expense lower than the standard deduction. See, e.g., In re Barrett, 371 B.R. 855, 859 (Bankr. S.D. Ill. 2007) (allowing the debtor to assert the full vehicle ownership expense deduction of $471 under the Local Standard, even though she had an average monthly car payment of $75.13); Naslund, 359 B.R. at 791, 793 (allowing the debtors to assert the full vehicle ownership expense deduction of $471 when their actual monthly payment was $133 and the average monthly payment over 60 months was $85.15). . . . Other courts have taken a contrary position. See, e.g., In re Rezentes, 368 B.R. 55, 56, 62 (Bankr. D. Hawaii 2007) (ruling that the debtors can only deduct their actual monthly housing expense of $300, even though the full housing expense deduction under the Local Standard was $2,000).

380 B.R. at 809 n.20.

Debtors argue that they are permitted to claim the *full* IRS ownership allowance on Line # 28 notwithstanding the actual amount of their lease payment, reasoning that "they have an extremely reasonable lease payment" and "[t]his payment will most likely increase at some time during the Debtors' plan." Debtors point out that they are deducting an IRS allowance on Line # 28, and that the monthly lease payment is subtracted from the IRS allowance and treated separately on Line # 47 in accordance with Form B22C. According to the Debtors,

> "The drafters of Form 22 intended that Debtors claim the full ownership allowance for their vehicles. Form 22 C, Line 28 would not be instructing Debtors to subtract the IRS ownership standard from their average secured debt expense if Debtors were unable to claim an IRS ownership standard. If the Trustee is correct, the drafters made a huge mistake, and Lines 28 and 29 should be deleted from Form 22. The drafters of Form 22 have had sufficient enough time to revise Form 22 if there has been such a huge mistake as the Trustee argues has been apparently made. Form 22 has been changed several times (including very recently) since its original inception, but Lines 28 and 29 remain. The Debtor should be allowed to claim deduction on Line 28."

Danielson acknowledges that Form B22C is an Official Form, but argues that Official Forms are not approved by Congress and cannot trump the statutory requirements of § 707(b)(2)(A). Danielson points to the IRS's application of the vehicle ownership allowance in non-bankruptcy situations and argues that, to the extent Debtors may be entitled to a vehicle ownership allowance, Debtors are entitled to claim their actual payment or the maximum amount allowed under the Local Standard, whichever is less.

"[N]ational or local forms are only valid to the extent that they conform to the substantive

provisions of the Bankruptcy Code." Ransom, 380 B.R. at 805 n.13; see Simmons v. Ford Motor Credit Co. (In re Simmons), 237 B.R. 672, 675 (Bankr. N.D. Ill. 1999) ("'[U]nlike the Rules, the Official Forms do not require approval either by the Supreme Court or by Congress, and while they should be observed and should be used . . . they do not have the force of law.'" (citation omitted)); In re Curry, 77 B.R. 969, 970 (Bankr. S.D. Fla. 1987) ("The Official Forms do not override the statute."). Section 707(b)(2)(A)(ii)(I) *allows* a debtor the applicable monthly expense amount specified under the Local Standards for transportation issued by the IRS. See 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added). Courts have looked to the IRS Collection Financial Standards and Internal Revenue Manual for guidance in applying the Local Standards. See, e.g., Fokkena v. Hartwick, 373 B.R. 645, 650-51 (D. Minn. 2007); Rezentes, 368 B.R. at 61; Slusher, 359 B.R. at 309; Hardacre, 338 B.R. at 726. As the court in Slusher observed:

> "Congress' decision to use the IRS standards within the Bankruptcy Code strongly suggests that courts should look to how the IRS determined those standards; that is, as to how the IRS would have applied them in similar circumstances. In making that inquiry, it makes no sense to turn a blind eye to existing administrative interpretations of the very text Congress has specified. And such interpretations exist. The IRS' [Internal Revenue Manual] sets forth various administrative interpretations of the financial collection standards for many cases. As a result, if guidance is sought on the meaning of the IRS standards Congress incorporated into the Bankruptcy Code, practical reason would suggest that courts should consider the full manner by which the IRS uses these standards."

359 B.R. at 309; see Rezentes, 368 B.R. at 61-62 ("If Congress had intended to adopt the IRS standards but prevent the courts from looking to the IRS's own interpretations of its standards, it seems reasonable to expect that it would have said so explicitly."). The IRS Collection Financial Standards, under the heading "Local Standards: Transportation," state, in pertinent part:

> If a taxpayer has a car payment, the allowable ownership cost added to the allowable operating cost equals the allowable transportation expense. *The taxpayer is allowed the amount actually spent, or the standard, whichever is less.*

IRS Collection Financial Standards, available at http://www.irs.gov/businesses/small/article/0,,id=104623,00.html (emphasis added). This interpretation is bolstered by the IRS's Internal Revenue Manual, which provides:

> A single taxpayer is normally allowed ownership and operating costs for one vehicle. *The taxpayer is allowed the standard for ownership and operating costs, or the amounts*

- 8 -

*actually spent, whichever is less.*

If a husband and wife own two vehicles, they are allowed the amount claimed for each vehicle up to the maximum allowances for ownership and operating expenses. *The taxpayers are allowed the standard for ownership and operating costs, or the amounts actually spent, whichever is less.*

Internal Revenue Service Manual, § 5.15.1.9(1)(B), available at http://www.irs.gov/irm/part5/ch15s01.html. (emphasis added); see Ransom, 380 B.R. at 806 ("The Manual provides that the Transportation Standard is the maximum a taxpayer may claim – it fixes the deduction at the allowance under the Local Standard or the amount actually paid, whichever is less."). But see Hardacre, 338 B.R. at 727 ("The effect of section 707(b)(2)(A)(ii)(I) is to permit the debtor to deduct the greater of her actual mortgage and car ownership payments or the amounts provided in the Local Standards.").

Based on the foregoing, the court will sustain Danielson's objection. Debtors will be permitted to deduct the vehicle ownership allowance under the Local Standard or their actual vehicle ownership expense, whichever is less. This interpretation is consistent with the underlying policy of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). See, e.g., Ransom, 380 B.R. at 808 ("To interpret the statute otherwise is counterintuitive to one of the main objectives of BAPCPA: to ensure that debtors repay as much of their debt as reasonably possible."); Rezentes, 368 B.R. at 61 ("Congress made clear that the income/expense screening mechanism of section 707(b)(2)(A) and (B) was 'intended to ensure that debtors repay creditors the maximum they can afford.'" (citation omitted)); Hardacre, 338 B.R. at 725 ("The means test was intended to 'ensure that those who can afford to pay some portion of their unsecured debts [be] required to do so.'" (citation omitted)).

### III. CONCLUSION

Danielson's objections to confirmation of the Debtors' proposed chapter 13 plan are sustained. In calculating projected disposable income, Debtors will not be permitted to deduct from current monthly income secured debt payments attributable to a junior lien on the Debtors' principal residence which the Debtors intend to value, treat as wholly unsecured, and strip in

-9-

1 conjunction with confirmation of their plan.  Furthermore, Debtors will be permitted to deduct the

2 vehicle ownership allowance under the Local Standard or their actual vehicle ownership expense,

3 whichever is less.

4    A separate order will be entered consistent with this opinion.

5 Dated: February 26, 2009

6

  PETER H. CARROLL
7  United States Bankruptcy Judge

| In re: | | CHAPTER: |
|---|---|---|
| | Debtor(s). | CASE NUMBER: |

## NOTE TO USERS OF THIS FORM:

1) Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
2) The title of the judgment or order and all service information must be filled in by the party lodging the order.
3) **Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
4) **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

## NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) ____AMENDED MEMORANDUM DECISION____ was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of __2/26/09__, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

Rod (PC) Danielson    notice-efile@rodan13.com
Stuart M Price    notice@pricelawgroup.com
United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

Thomas R. Reyes
Denise M. Reyes
2765 Via Cielo Drive
Corona, CA 92882

Pam Lacey, Esq.
Price Law Group
15760 Ventura Blvd., Ste. 1100
Encino, CA 91436

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009

F 9021-1.1